Alexis Galindo (State Bar No. 136643)
  agalindo@cgsattys.com
Maximiliano Galindo (State Bar No. 328187)
  mgalindo@cgsattys.com
**CURD GALINDO & SMITH LLP**
301 East Ocean Blvd., Suite 1700
Long Beach, CA 90802-4828
Telephone:  (562) 624-1177
Facsimile:    (562) 624-1178

Attorneys for Plaintiffs
San Juana Rodriguez-Gonzalez; J. Luis Duron-Luevano; both Individually and as Successors in Interest of  Luis Enrique Duron-Rodriguez; Miguel Angel Duron-Rodriguez

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JUANARODRIGUEZ-GONZALEZ; J. LUIS DURON-LUEVANO; Individually and as Successor in Interest of  LUIS ENRIQUE DURON-RODRIGUEZ; MIGUEL ANGEL DURON-RODRIGUEZ.<br><br>                              Plaintiffs,<br><br>          vs.<br><br>COUNTY OF SANTA BARBARA; SHAWN LAMMER; DEPUTY JOHN HARTLY FREEDMAN; COTTAGE HEALTH SYSTEM, a California corporation; SANTA BARBARA COTTAGE HOSPITAL, a California corporation, GOLETA VALLEY COTTAGE HOSPITAL, a California Corporation, BRETT WILSON,M.D.; WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation; JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL; CALEB TAMMAR; .                              Defendants. | **CASE NO:**<br><br>  **COMPLAINT FOR DAMAGES  AND DEMAND FOR JURY TRIAL**<br><br>1. 42 U.S.C. § 1983 – Deliberate Indifference<br>2. 42 U.S.C. § 1983 – Failure to Supervise<br>3. 42 U.S.C. § 1983 – Monell<br>4. California Govt Code §845.6 – Failure to Summon Medical Care<br>5. Negligence<br>6. Medical Negligence<br>7. Substantive Due Process<br>8. Medical Negligence |

Plaintiffs, by and through their attorneys, CURD, GALINDO & SMITH, LLP, submits the following Complaint:

## JURISDICTION

1.    This Complaint alleges claims against defendants COUNTY OF SANTA BARBARA; SHAWN LAMMER; DEPUTY JOHN HARTLY FREEDMAN; DEPUTY DE SOTO; DEPUTY RIVERA; COTTAGE HEALTH SYSTEM, a California corporation; SANTA BARBARA COTTAGE HOSPITAL, a California corporation, GOLETA VALLEY COTTAGE HOSPITAL, a California Corporation, BRETT WILSON,M.D.; WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR. The complaint is a civil rights wrongful death/survival action arising under 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.  Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.  The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

1

**INTRADISTRICT ASSIGNMENT**

2.    A substantial part of the events and/or omissions complained of herein occurred in the County of Santa Barbara, and this action is properly assigned to the United States District Court for the Central District of California.

**PARTIES AND PROCEDURE**

3.    LUIS ENRIQUE DURON-RODRIGUEZ is the DECEDENT. DECEDENT died on September 3, 2023 while in the custody of the Santa Barbara County Sheriff's Office at Santa Barbara County Jail.

4. Plaintiffs, San Juana Rodriguez-Gonzalez and J. Luis Duron-Luevano are the biological parents of  LUIS ENRIQUE DURON-RODRIGUEZ (DECEDENT) who bring these claims individually for wrongful death and violation of their personal rights, and also as successor in interest for DECEDENT pursuant to California Code of Civil Procedure §§ 377.10 et seq.

5.    MIGUEL ANGEL DURON-RODRIGUEZ  is the adult biological brother of DECEDENT. Plaintiff MIGUEL ANGEL DURON-RODRIGUEZ also brings claims on his own behalf in his individual capacity for wrongful death.

6.    DEFENDANTS all reside in the County of Santa Barbara, State of California and all bring their claims under state and federal law.

7.    All Plaintiffs also bring claims pursuant to California Code of Civil Procedure §§ 377.60 et seq. for wrongful death and claims for violations of their

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

personal federal constitutional rights of familial association.  All Plaintiffs bring their claims individually. DECEDENT brings claims for wrongful death, and survival claims, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law.

8.    At all relevant times, Defendant Santa Barbara County ("COUNTY") was a municipal corporation existing under the laws of the State of California. Defendant COUNTY is a chartered subdivision of the State of California with the capacity to be sued. At all relevant times, Defendant COUNTY was responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Santa Barbara County Sheriff's Office and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California.

9.    At all relevant times, Defendant COUNTY was the employer of Defendants, SHAWN LAMMER,  Deputy JOHN HARTLY FREEDMAN; Defendant Deputy DE SOTO and DEPUTY RIVERA; and, DOES 1 through 10 capacity.

10.    At all relevant times, Defendants SHAWN LAMMER, Deputy JOHN HARTLY FREEDMAN; Defendant Deputy DE SOTO and DEPUTY RIVERA  were

sheriffs' deputies, employees, and agents of Defendant COUNTY, or were sheriffs' deputies, staff members, employees, and agents of the custodial facilities located in Santa Barbara County and which were owned, maintained, controlled, and supervised by Defendant COUNTY and their law enforcement agency, respectively.

11.    Defendants DEPUTY DE SOTO and DEPUTY RIVERA, and DOES 1 through 10, inclusive, and each of them, were individuals engaged in the operation, business, and/or management of the custodial and/or jail facility and/or were engaged in the provision of services, medical care, protection, administration, and daily needs to inmates at custodial facilities within Santa Barbara County where DECEDENT was held from the time of his arrest to the time of his death.

12.    On January 22, 2024  a proper and timely tort claim was served on the COUNTY OF SANTA BARBARA on behalf of Plaintiffs, pursuant to Government Code § 910 et seq., and the claims were denied on February 7, 2024. This action was thereafter timely filed within all applicable statutes of limitation.

13.    Despite Plaintiffs' timely and proper requests through their counsel, and without any legitimate basis, COUNTY OF SANTA BARBARA has refused to produce the incident report and DECEDENT's inmate records that would have provided additional facts for this Complaint and would have identified specific individuals responsible for violations of DECEDENT'S rights.  The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

named herein as DOES 1 through 10 are unknown to Plaintiffs, who therefore sue said Defendants by said fictitious names. Plaintiffs will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained.  Plaintiffs are informed, believe, and thereon allege that all Defendants sued herein as DOES are in some manner responsible for the acts, omissions, and injuries alleged herein.

14.    Plaintiffs allege, on information and belief, that each of the Defendants sued herein were wrongfully, deliberately indifferently, unreasonably, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs and/or DECEDENT.  Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both the individually named and DOE Defendants.

15.    Plaintiffs are informed, believe, and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as

alleged herein, except as may hereinafter be otherwise, specifically alleged.  At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiffs' and DECEDENT's constitutional rights and other actionable harm.

16.    Defendants COTTAGE HEALTH SYSTEM, SANTA BARBARA COTTAGE HOSPITAL, GOLETA VALLEY COTTAGE HOSPITAL, and BRETT WILSON, M.D. are health care providers that treated DECEDENT on August 31, 2023.

17.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC; herein after (CFMG) WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; and WELLPATH HOLDINGS, INC; (WELLPATH) are health care providers employed by Santa Barbara County, a government entity and are state actors for 42 U.S.C. § 1983 purposes acting under color of law when treating inmates and/or implementing policies and practices regarding provision of medical care. *West v. Atkins*, 487 U.S. 42, 54 (1988). CFMG is a California corporation licensed to and doing business in the State of California, as a contracted provider of medical and mental health services to SANTA BARBARA COUNTY. CFMG had a business address in Monterey County and in San Diego County, and since October 1, 2018, in Nashville, Tennessee as Wellpath. On information and belief, CFMG and

WELLPATH and its employees and agents are and were at all material times responsible for making and executing policies, procedures, and training related to the medical care and/or mental health care of detainees and prisoners in the COUNTY OF SANTA BARBARA jails, including, but not limited to, properly assessing and classifying  inmates, properly assessing and addressing the mental health needs of inmates, and properly assessing and treating the serious medical and mental health needs of inmates.

18.     At all material times, CFMG and WELLPATH were owned and controlled by H.I.G. Capital and CFMG acts on behalf of H.I.G. and was and is responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of its employees and agents of CFMG, including DOES 1-10.

19.     The WELLPATH defendants include, but are not limited to, CFMG employees and agents, acting within the course and scope of their employment with CFMG (and within the course and scope of their employment by SANTA BARBARA COUNTY by virtue of CFMG's contract with SANTA BARBARA COUNTY) who were responsible for properly assessing and classifying inmates, properly assessing and addressing the medical needs of inmates, properly assessing and addressing the mental health needs of inmates, properly assessing and treating the serious medical needs of inmates, providing appropriate observation and a treatment plan for serious medical needs, including suicide prevention, care and treatment for

mental illness and emotional disturbance, monitoring inmates, and summoning medical care when it was needed.

20.    Defendant BRETT WILSON, M.D. (hereinafter "Dr. WILSON"), at all times mentioned herein was an employee and/or agent of COTTAGE HEALTH SYSTEM, SANTA BARBARA COTTAGE HOSPITAL and/or GOLETA VALLEY COTTAGE HOSPITAL. Dr. WILSON was and is a health care practitioner and/or emergency room physician responsible for care, treatment and orders and to ensure delivery of health care by subordinate health staff providing health treatment and supervision to DECEDENT and was responsible for the health care of DECEDENT on August 31, 2023. Dr. WILSON negligently and with wanton disregard failed to order a chest x-ray of DECEDENT, failed to start him on Librium and failed to treat DECEDENT's chest contusion on August 31, 2023 and instead released him to be booked and incarcerated, while DECEDENT was still intoxicated.

21.    Defendants JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR, at all times mentioned herein were employees and/or agents of CFMG/Wellpath and SANTA BARBARA COUNTY. Defendants JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR were health care practitioners and had a duty to provide medical and psychiatric care, treatment and orders and to ensure delivery of medical and mental health care to DECEDENT. With wanton disregard and deliberate indifference they

failed to request and summon medical attention for DECEDENT on August 31, 2023, September 1, 2023 and September 2, 2023 until it was too late on the morning of September 3, 2023.  Defendants JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR failed to order that DECEDENT be started on a alcohol withdrawal syndrome protocol - Librium to prevent alcohol withdrawal syndrome.    They are sued in their individual capacity. At all times mentioned herein they were acting under color of law.

22.      Defendant SHAWN LAMMER (hereinafter "LAMMER"),  is the administrator of the Santa Barbara County Jail and custodian of the pre-trial detainees within it, along with DOES 1-10, who were deputies, sergeants, captains, lieutenants, commanders and undersheriffs and/or civilian employee agents, policy makers and/or agents and representatives of SANTA BARBARA COUNTY and the correctional staff.

23.      Defendant LAMMER was charged by law and was responsible with the administration of defendant SANTA BARBARA COUNTY and its employees, and for the supervision, training and hiring of  persons, agents and employees working within the county jail, including the sworn officers and deputies, as well as the civilian staff and DOES 1-10, inclusive.

24.      LAMMER is sued in his individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

10

subordinates, or for his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of mentally ill inmates. LAMMER's affirmative conduct involves his failure to implement and ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury. LAMMER failed to implement a policy which mandated that the SANTA BARBARA COUNTY Jail staff would insure that a pre-trial detainee or inmate's mental and medical condition was properly charted so that upon transfer to a different facility the inmate would receive adequate and appropriate care.  LAMMER also failed to adequately monitor the administration of the contract with CFMG/Wellpath even though he had been repeatedly alerted to the facts of this unconstitutional conduct and knew the jail had become unsafe for those with serious mental health needs like DECEDENT.

25.    Plaintiffs are informed and believe that defendant LAMMER DOES 1 through 10, were, at all relevant times herein, the Commander, Supervisor and/or Supervisors of Personnel, of the Santa Barbara County Jail and were the agents, servants and employees of COUNTY OF SANTA BARBARA. At all times relevant herein, these defendants were responsible for the training and supervision of all Santa Barbara County Jail custodial employees and/or agents. These Defendants were also responsible in some capacity for the promulgation of the policies and procedures and

allowances of the practices and customs pursuant to which the acts alleged herein

occurred. Defendants are sued herein in their individual capacities as Commanders,

Supervisors and/or Supervisors of Personnel of Santa Barbara County Jail under the

color of state law within the meaning of 42 U.S.C. § 1983.

26.    At all material times, each Defendant acted under color of the laws,

statutes, ordinances, and regulations of the State of California.

27.    This complaint may be pled in the alternative, pursuant to Rule 8(d)(2)

of the Federal Rules of Civil Procedure.

28.    Defendants are sued under Title 42 U.S.C. § 1983 for violations of the

Fourth and Fourteenth Amendments of the United States Constitution, California

state law, the California Tort Claims Act, and the Government Code for the acts and

omissions of public employees Defendants, and each of them, who at the time they

caused Plaintiffs' and DECEDENT 's injuries, damages and death were duly

appointed, qualified and acting officers, employees, and/or agents of SANTA

BARBARA COUNTY, CFMG/Wellpath,  and acting within the course and scope of

their employment and or agency.

29.    Each of the Defendants caused and is responsible for the unlawful

conduct and resulting harm by, inter alia, personally participating in the conduct, or

acting jointly and in concert with others who did so, by authorizing, acquiescing,

condoning, acting, omitting or failing to take action to prevent the unlawful conduct,

by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain adequate training, supervision and staffing with deliberate indifference to Plaintiffs' rights, by failing to maintain proper and adequate policies, procedures and protocols, by failing to ensure DECEDENT  was given effective medical and mental health care, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

30.    Whenever and wherever reference is made in this Complaint to any act by Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly or severally.

## **GENERAL ALLEGATIONS**

**A.    Deliberate Indifference to DECEDENT's Medical Needs**

34**.**    Defendant SHAWN LAMMER ("LAMMER") was the Santa Barbara County Sheriff Commander responsible for the operations of the Santa Barbara County Jail. The Santa Barbara County Sheriff's Office is responsible for the overall operation of the Santa Barbara County Jail.  As Commander of the Jail Operations, LAMMER,  was responsible for complying with state and federal law, including the United States Constitution, in operating the Santa Barbara County Jail.  In Santa Barbara County, there have been 34 jailhouse deaths since 2006. In the 14 years between 2006 and 2020, there were 24. Since 2020, there have been 10 in three years.

35.     The Santa Barbara County Sheriff's Department Detention Bureau maintained a policy on Inmate Classification. The Policy was Approved by: Sheriff Brown. The policy however failed to insure that a transferring pre-trial detainee was transferred or delivered with the appropriate disclosure of said inmates medical and mental condition to insure that said inmate received the adequate medical and mental care, treatment and housing upon transfer. The policy stated its purpose as follows to:

"…establish and maintain a systematic and consistent method of classifying inmates in custody for placement into specific housing locations, taking into account each inmate's sex, age, criminal sophistication, seriousness of crime(s) charged, assaultive/non-assaultive behavior, and/or other criteria for the purpose of maintaining the safely of inmates, staff, the security of the jail facilities, and public safety but it failed to address the transferring inmate."

36.     The Policy purports to apply during both initial classifications of an inmate after booking and prior to placement in a housing unit, as well as subsequent reclassifications.

37.     The policy provided that a record shall be maintained of each inmate's classification/custody level, housing restrictions, and housing assignments. Each inmate's classification record shall be updated with all classification related input, each (re)classification assessment and each housing unit reassignment. Inmate classification records shall contain ongoing classification information and shall

thoroughly document all classification related actions in regard to each inmate during their confinement.

38.    Classification Officers' responsibilities are delineated in the policy and include, among other things, creating and maintaining the inmate record, performing initial classifications and classification reviews and making housing changes in the manner prescribed by policy.

39.    Among other things, the Policy requires that "rule violations, misconduct, non-conforming behavior, and the resultant disciplinary action(s) will be considered in classification determinations, handling requirements, housing assignments, and program eligibilities."  The Policy requires further that upon identification, classification staff shall segregate all mentally disordered inmates. If an inmate appears to be a danger to themselves or to others or if they appear gravely disabled they shall be considered mentally disordered. If a professional opinion is not readily available, an inmate shall be considered mentally disordered until a professional opinion can be obtained.

40.    The Classification Policy defines High Power Inmates, Known Management Problems, Protective Custody Inmates, and Inmates with Mental Deficiency, and purports to require special care for such inmates, including Administrative Segregation, which is defined as "the physical separation of inmates

from the general inmate population in order to provide and maintain the safety of inmates, staff, security of the jail facilities, and public safety,"

41.    The Classification Policy purports to govern both classification of inmates, as well as their housing. These are two different things.

42.    Commander LAMMER's culpability is based upon his status as the operations commander for the County of Santa Barbara and its jail. As the operations commander, he had the power to make and enforce policies that ensured that his jail met constitutional standards including a policy that mandated that an inmate or pre-trial detainee suffering from substance use disorders or mental illness be provided with appropriate care and that said substance use disorders or mental illness be charted when the inmate or pre-trial detainee is transferred into Santa Barbara County Jail.

43.    Commander LAMMER knew that the Policy and practices in the jail required withdrawal-related medical care for inmates.  Commander LAMMER was aware that if Santa Barbara County Jail did not offer withdrawal-related medical care the County could face the risk of legal liability under both federal and state laws, as well as adverse health outcomes for those in custody.

44.    The lack of such a policy created a dangerous condition for all pre-trial detainees, inmates and prisoners or a specified group of prisoners.

45.    The Santa Barbara County's failure to implement an oversight policy was a disregard of an obvious risk of constitutional violation. The inadequacy of the Policy was likely to result in the violation of constitutional rights, that the policymakers, including LAMMER, should have known to reasonably be described as deliberately indifferent. LAMMER as the operations commander was on actual or constructive notice that the particular omission was substantially certain to result in the violation of the Santa Barbara County inmates/pre-trial detainees' constitutional rights.  LAMMER was further aware that the over 25 in custody deaths resulted from inmates who suffered from either substance use disorders or mental illness.

46.    Santa Barbara County purported to have specific policies asserting the safety of inmates and staff as paramount. The Policy's stated purpose was to "establish and maintain a systematic and consistent method of classifying inmates in custody for placement into specific housing locations, taking into account each inmate's sex, age, criminal sophistication, seriousness of crime(s) charged, assaultive/non-assaultive behavior, and/or other criteria for the purpose of maintaining the safety of inmates, staff, the security of the jail facilities, and public safety."  It further requires that "upon identification, classification staff shall segregate all mentally disordered inmates. If an inmate appears to be a danger to themselves or to others or if they appear gravely disabled they shall be considered mentally disordered. If a professional opinion is not readily available, an inmate shall

be considered mentally disordered until a professional opinion can be obtained." Under the Classification Policy, certain classes of inmates, such as High Power Inmates, inmates with Mental Deficiency, Known Management Problems, and Mentally Disordered Inmates, qualify for protective custody and/or Administrative Segregation. Administrative Segregation is defined as the physical separation of inmates from the general inmate population in order to provide and maintain the safely or inmates, staff, security of the jail facilities, and public safety. These inmates have been identified as being suicidal, escape risks, qualify for protective custody, assaultive toward staff or other inmates, or who by the nature of their behavior have demonstrated their potential for violence or violating facility rules.

47.    Even with this policy in place, there is no question that Santa Barbara County, through Commander LAMMER, subjectively knew of the dangers and the problems within its own jails given the number of in custody deaths. The high number of in custody deaths was a sign that Santa Barbara County Jail was unable or incapable of treating the inmates with substance use disorders or mental illness.

48.    There can be no doubt that Santa Barbara County's classification and housing policies were inadequate. Santa Barbara County, its management, and policymakers were deliberately indifferent, negligent, and failed to meet the applicable standards of care in failing to provide adequate policies and procedures related to classification, housing and transfer of the inmates at the Santa Barbara

County Jail, this includes, but is not limited to, the failure to maintain classification and housing policies necessary to provide for the safety of inmates.

49.    On August 31, 2023, at approximately 6:16 am, DECEDENT was being pursued by Santa Barbara County Sheriff Deputies for excessive speed on Hollister Avenue. DECEDENT was driving his Infinity passenger vehicle which collided with a parked car and then struck a tree on Hollister Avenue and Viajero Avenue. DECEDENT's vehicle suffered significant front end damage which caused the airbags to deploy.  Santa Barbara County Fire responded.  DECEDENT was not provided medical attention at the scene.  Defendant Deputy, John Hartley Freedman denied DECEDENT medical care and medical transport and precluded the Santa Barbara County Fire/Paramedics to treat and transport DECEDENT.  Instead, Deputy John Hartley Freedman transported DECEDENT to Goleta Valley Cottage Medical Center himself in his patrol vehicle.

50.    DECEDENT was known to the Santa Barbara County Jail staff as an alcoholic as he had been in custody before at Santa Barbara County Jail for alcohol intoxication.  As a result of his alcohol addiction, DECEDENT was driving under the influence and crashed his vehicle. DECEDENT impacted his upper body with the interior portion of the vehicle and suffered head trauma and contusions to his chest and arms.

51.    After Deputy John Hartley Freedman transported DECEDENT to Goleta Valley Cottage Medical, DECEDENT was evaluated at Goleta Valley Cottage Medical Center by defendant BRETT WILSON, M.D.  The initial diagnosis was laceration of internal mouth, facial trauma, and alcoholic intoxication with complication. Dr. Wilson did not order a chest x-ray.  Dr. Wilson merely cleaned DECEDENT's wounded lip, sutured the lacerated lip and released DECEDENT to be booked into the Santa Barbara County Jail.

52.    DECEDENT was obviously intoxicated and had suffered chest and head trauma; however, BRETT WILSON, M.D. failed to hold DECEDENT for observation and failed to start DECEDENT on a alcohol withdrawal syndrome protocol-Librium to manage the substance use withdrawal. Dr. Wilson failed to order a head CT scan and failed to order a chest x-ray.

53.    Defendants BRETT WILSON, M.D.,  COTTAGE HEALTH SYSTEM, SANTA BARBARA COTTAGE HOSPITAL and/or GOLETA VALLEY COTTAGE HOSPITAL,  and all doctors, nurses and healthcare providers employed by or agents of the above acted below the standard of appropriate medical care leading to the death of DECEDENT on August 31, 2023. Defendants held themselves out as providers of appropriate medical and healthcare services and DECEDENT and Plaintiffs relied on the Defendants to provide appropriate medical and healthcare

services; Plaintiffs were unaware of the misdiagnosis and inappropriate medical and

healthcare.

54.     At the point of processing DECEDENT into the SANTA BARBARA

COUNTY Jail, Defendants JAYNA LIFORD; KATHLEEN McELROY; HANNA

FORDAHL and CALEB TAMMAR,  CFMG/Wellpath employees, and DOES 1-10

all knew or should have known about DECEDENT's prior pre-trial detainee status as

an alcoholic substance abuse inmate and immediately should have started

DECEDENT on Librium to control the effects of substance withdrawal syndrome.

55.     From August 31, 2023 through the morning of September 3, 2023,

Decedent was confused and in distress. Defendants JAYNA LIFORD; KATHLEEN

McELROY; HANNA FORDAHL and CALEB TAMMAR failed to properly assess

and address DECEDENT's medical health needs, failed to place him on Librium

protocol to prevent substance withdrawal syndrome, failed to transfer DECEDENT to

a higher level of care facility-an emergency room, failed to summon medical care for

DECEDENT despite his exhibiting symptoms consistent with having a medical

emergency.  Defendants failed to immediately transfer DECEDENT to a hospital for

emergency and psychiatric treatment, failed to institute constant observation of

DECEDENT, failed to send DECEDENT to the hospital when he was not improving

in the his cell, failed to request appropriate medical care. The Defendants, JAYNA

LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR

failed to request or institute any increased observation of DECEDENT following his discharge from the Cottage Hospital, and failed to create a treatment plan for DECEDENT, among other failures, all with deliberate indifference to DECEDENT's serious medical and mental health needs.

56.    On August 31, 2023 at 10:19AM when DECEDENT arrived at Santa Barbara County Jail  and was screened. Defendant JAYNA LIFORD knew or should have known that DECEDENT was intoxicated as noted by Cottage Hospital. Defendant JAYNA LIFORD charted "every effort shall be made to initiate Librium for alcohol and/or benzodiazepine withdrawal management within 4 hours of risk identification". However, Decedent was not started on Librium.

57.    Also at screening Defendant JAYNA LIFORD knew or should have known that DECEDENT was suffering from tremors as noted by Cottage Hospital. Defendant JAYNA LIFORD charted "Prior withdrawal: If Tremors, Seizures, or DTs is marked, an Alert will automatically generate for Withdrawal History. Defendant JAYNA LIFORD failed to set the Alert that DECEDENT was experiencing "Tremors"

58.    All day on September 1, 2023 and all day September 2, 2023, the medical staff,  Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC; herein after (CFMG) WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; and WELLPATH HOLDINGS, INC; (WELLPATH) failed to examine or

evaluate DECEDENT even after reports that Decedent was confused, disoriented and in distress.

59.   On September 2, 2023 at 6:58 PM, the custody staff alerted the WELLPATH medical staff member, KATHLEEN McELROY, that DECEDENT should be sent for a mental health evaluation as DECEDENT, was acting confused and disorganized. However, Defendant WELLPATH medical staff member, KATHLEEN McELROY, despite DECEDENT exhibiting symptoms consistent with having a medical and/or mental health emergency requiring immediate transfer to a hospital for emergency and/or psychiatric treatment, failed to institute the transfer and/or constant observation of DECEDENT.   KATHLEEN McELROY failed to send DECEDENT to the hospital. Defendant KATHLEEN McELROY although she noted that DECEDENT was suffering from slow speech, blunted affect, withdrawn, impaired memory and with a bruised and swollen arm and chest, failed to request appropriate medical care and failed to request or institute any increased observation of DECEDENT following the alerts by the custody staff, and failed to create a treatment plan for DECEDENT, among other failures, all with deliberate indifference to DECEDENT's serious medical and mental health needs.

60.    On September 3, 2023,  the medical staff,  Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC; herein after (CFMG) WELLPATH INC.;

WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; and WELLPATH

HOLDINGS, INC; (WELLPATH) again failed to examine or evaluate DECEDENT.

61.    On September 2, 2023 at 23:55 the DECEDENT had extensive bruising-

ecchymosis to the right chest and right arm. DECEDENT was found by the custody

staff to be unresponsive.  He went into cardiac arrest.  The medical staff was alerted,

CPR was commenced, paramedics arrived and took over CPR and life support.

DECEDENT was transported to COTTAGE HOSPITAL.  The emergency physician at

COTTAGE HOSPITAL, Dr. Bergal opined that DECEDENT suffered a pulmonary

embolism which was the cause of cardiac arrest. Her differential diagnosis consisted of

cardiac contusion, cardiac tamponade, pulmonary embolism, and acute myocardial

infarction.

62.    Time of death was called at 1:57 AM September 3, 2023.

**B.  Defendant Supervisors Had Knowledge of Inadequacy of Medical Staff**

**and Delivery of Mental Health Care at Santa Barbara County Jail and Failed to**

**Take Corrective Action.**

63.    Prior to August 31, 2023, Commander LAMMER and SANTA

BARBARA COUNTY, DOES 1 through 10, knew or should have known of a history

of years of notice of ongoing failure to provide inmates indicated and timely

reasonable medical/mental health care, knew or should have known of inadequate

and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent

and inadequate provision of health care and delivery thereof, denying access to outside the jail facility hospital or other mental health programs, failure to take corrective measures, including ignoring prior reports and recommendations not to rehire CFMG/WELLPATH, ignoring judicial orders to abate or take corrective action regarding care to the mentally ill, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and unabated risks of injury or death to inmates. The number of lawsuits against CFMG/WELLPATH throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to medical and mentally ill detainees and their failure to take corrective action.

64.     From August 31, 2023 through the morning of September 3, 2023, DECEDENT was denied the medical treatment and care.  DECEDENT suffered from alcohol addiction, substance use withdrawals, a mental illness and disability and medical impairments that limited and/or substantially limited his mental, medical, or physical health condition as such, DECEDENT qualified as an individual with a mental and physical disability under California law and DECEDENT met the essential eligibility requirements custodial programs to provide access to medical and mental health care services for its inmate patients.

65.     Defendants Commander LAMMAR and command Correctional officers and corrections staff and supervisors DOES 1 through 10, failed to review DECEDENT's custodial medical history which indicated his risk for substance use withdrawal.

66.     Defendants Commander LAMMAR and other supervisory Correctional officers at Santa Barbara County Jail failed to properly supervise the subordinate correctional officers to ensure that the subordinate correctional officers were properly performing their duties.

67.     Defendants Commander LAMMAR and other Santa Barbara County Jail supervisory Correctional officers were responsible for the health and safety of DECEDENT because he was in their custody, they had "stripped [him] of virtually every means of self-protection and foreclosed [his] access to outside aid." *Farmer* at 833.

68.  As a direct and proximate cause of the Santa Barbara County Jail supervisory correctional officers' actions, DECEDENT suffered injury, trauma, physical pain, and a horrific death.

69.  DECEDENT was denied the benefits of the services, programs, and activities of Santa Barbara County Jail, and was denied accommodation for his disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and

delivery of treatment, follow-up, and supervision.  This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk of assault by other inmates, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and, DECEDENT had mental impairments that substantially limited one or more of his major life activities.

70.    As a result of the acts and misconduct of all defendants, DECEDENT died, and Plaintiffs have suffered, are now suffering, and will continue to suffer damages and injuries as alleged above.  Plaintiffs have suffered loss of love and society and claim damages for the wrongful death of their son/brother. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees.

71. Based on these violations Plaintiffs request the following relief against each and every Correctional officers and corrections staff and supervisors' and DOES 1 through 10 herein, jointly and severally:

72.    All Defendants' deliberate indifference for DECEDENT's serious medical needs, their denial of necessary and appropriate medical and psychiatric care, their failure to provide competent medical care and treatment, their failure to transfer DECEDENT for inpatient hospitalization, and/or their failure to admit him to

appropriate hospital, their reckless disregard for his medical emergency which resulted in his death.

73.      As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, all Plaintiffs sustained the following injuries and damages, past and future, including, but not limited to:

  a) Wrongful death of DECEDENT;

  b) Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

  c) Emotional distress from the violations of their personal Constitutional rights, including grief, sorrow, anxiety, sleeplessness, humiliation, and indignity;

  d) Loss of enjoyment of life;

  e) All other legally cognizable special and general damages, including financial support;

  f) Violations of state and federal constitutional rights; and,

  g) All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code §§ 52 and 52.1, and under California and United States statutes, codes, and common law.

74.    As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, Plaintiffs SAN JUANA RODRIGUEZ-GONZALEZ; J. LUIS DURON-LUEVANO; Individually and as Successor in Interest of LUIS ENRIQUE DURON-RODRIGUEZ and MIGUEL ANGEL DURON-RODRIGUEZ, have sustained the following injuries and damages, past and future, including, but not limited to:

a)    Hospital and medical expenses incurred by DECEDENT;

b)    Coroner's fees, funeral, and burial expenses;

c)    DECEDENT'S loss of life, pursuant to federal civil rights law;

d)    DECEDENT'S conscious pain and suffering, pursuant to federal civil rights law; and,

e)    Economic support from DECEDENT,

f)    All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code § 52, and as otherwise alDECEDENTd under California and United States statutes, codes, and common law.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983)**

**Deliberate Indifference to Serious Medical Needs, Health and Safety**

**PLAINTIFFS SAN JUANARODRIGUEZ-GONZALEZ; J. LUIS DURON-LUEVANO, Successors in Interest Against SHAWN LAMMER; DEPUTY JOHN HARTLY FREEDMAN; DEPUTY DE SOTO; DEPUTY RIVERA; WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation,**

**JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR)**

75.    Plaintiffs SAN JUANARODRIGUEZ-GONZALEZ and J. LUIS DURON-LUEVANO, as Successors in Interest for Decedent, re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

76.    Individual defendants, SHAWN LAMMER; DEPUTY JOHN HARTLY FREEDMAN; DEPUTY DE SOTO; DEPUTY RIVERA; WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR deprived DECEDENT, a pre-trial detainee, of the rights,  privileges and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, by subjecting DECEDENT, or through their deliberate indifference in allowing others to subject DECEDENT, to the delay and denial of medical or mental health care and/or access thereto for a serious but treatable medical condition.

77.    These Defendants knew or should have known that DECEDENT had a high likelihood to suffer alcohol withdrawal syndrome based on the DECEDENT's history and his physical appearance, presentation, medical records and examination. Defendants knew or must have known that DECEDENT would begin to suffer the DTs and alcohol withdrawal syndrome is life threatening.  The failure to immediately

start DECEDENT on Librium was a total disregard for DECEDENT's safety. Defendants ignored their duty of care to DECEDENT, and with their actions and inactions they caused lapses and a lack of continuum of indicated care and treatment and indicated appropriate housing, which they knew or should have known, would cause or worsen DECEDENT's already deteriorating mental health condition, and failed to disclose decedent's mental condition upon transfer to CDCR.

78.    These Defendants knew or must have known that DECEDENT's medical or mental health condition was serious but treatable and that DECEDENT required access and delivery to urgently needed medical/mental health care, and they further had a duty to provide DECEDENT reasonable security and indicated housing to accommodate his mental health condition. These Defendants knew or should have known that if not treated, DECEDENT's mental health would continue to deteriorate, worsen and cause him harm and/or death. Defendant DEPUTY JOHN HARTLY FREEDMAN failed to have DECEDENT transported to the hospital by ambulance or paramedics.   Defendant DEPUTY JOHN HARTLY FREEDMAN interfered and prevented the Santa Barbara County Fire Department paramedics treat DECEDENT at the scene. Defendant DEPUTY JOHN HARTLY FREEDMAN prevented  Santa Barbara County Fire Department paramedics from transporting DECEDENT to the hospital. Defendants DEPUTY DE SOTO and  DEPUTY RIVERA knew DECEDENT was an alcoholic.  They knew or should have known that DECEDENT

was suffering from alcohol withdrawal syndrome and failed to advise the medical staff that DECEDENT needed immediate treatment.

79.  SHAWN LAMMER and DOES 1-10, failed to promulgate and implement policies, procedures, and practices to ensure that inmate like DECEDENT, who needed immediate treatment for alcohol poisoning, would receive such treatment, pursuant to their duty and responsibility to provide appropriate housing, safety, security and observation to ensure DECEDENT's safety and security at all times, and that the deputies responsible to monitor, observe and provide for DECEDENT's security and safety at all times did so competently.

80.  JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR failed to timely provide medical care and treatment to DECEDENT to prevent the alcohol syndrome and distress.  JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR were deliberately indifferent to the serious psychiatric and medical needs of DECEDENT, who was a known alcoholic.

81.  JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR were directly responsible to ensure that DECEDENT was properly provided with competent psychiatric, medical, nursing care and treatment, but they failed to take action and acted with deliberate indifference to DECEDENT's care and treatment or lack thereof.

82.   As a result of these Defendants' deliberate indifference and/or reckless disregard for DECEDENT's security, safety, wellbeing, and appropriate and indicated housing and observation and/or transfer to a higher level of care and their disregard and ignoring of said inadequate and incompetent conditions for DECEDENT's needed medical care and treatment, DECEDENT suffered damages as set forth.

83.    By the actions and omissions described above, Defendants and each of them, violated 42 U.S.C. § 1983, depriving Plaintiffs of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the U .S. Constitution:

a.    The right to be free from an unreasonable ongoing seizure as a pretrial detainee as secured by the Fourth and Fourteenth Amendments;

b.    The right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment;

c.    The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society and support of each other, as secured by the First and Fourteenth Amendments.

84.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of Plaintiffs (individually and on behalf of DECEDENT).

85.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

86.     As a direct and proximate result of the foregoing, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorney fees as more specifically stated above.

**SECOND CAUSE OF ACTION**
**FAILURE TO SUPERVISE**
**(42 U.S.C. § 1983)**
**BY PLAINTIFFS SAN JUANA RODRIGUEZ-GONZALEZ and J. LUIS DURON-LUEVANO, as Successors in Interest for Decedent, AGAINST DEFENDANTS SHAWN LAMMER AND DOES 1-10 IN THEIR INDIVIDUAL CAPACITY**

87.     Furthermore, on or before August 29, 2023, Defendants SHAWN LAMMR,  and DOES 1-10 failed to properly  supervise, and guide their staff and medical personnel assigned to the SANTA BARBARA COUNTY JAIL, including but not limited to CFMG/Wellpath and DOES 1-10, to take immediate measures to

ensure that an inmate suffering from alcohol withdrawals be immediately provided medical treatment and care to prevent booked injury.

88.     Defendants SHAWN LAMMR and DOES 1-10 acted with deliberate indifference to their responsibility and duty to DECEDENT, and their actions and/or inactions in failing to supervise their subordinates to take adequate measure to protect inmates, such as DECEDENT, from alcohol withdrawals.

89.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

90.     As a direct and proximate result of the foregoing, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorney fees as more specifically stated above.

**THIRD CAUSE OF ACTION**
**Municipal Liability for Unconstitutional Custom or Policy**
**(42 USC §1983)-MONELL**
**(BY PLAINTIFFS SAN JUANARODRIGUEZ-GONZALEZ and J. LUIS**
**DURON-LUEVANO, as Successors in Interest for Decedent, AGAINST**
**DEFENDANT SANTA BARBARA COUNTY)**

91.     Plaintiffs SAN JUANARODRIGUEZ-GONZALEZ and J. LUIS DURON-LUEVANO, as Successors in Interest for Decedent, reallege each and every paragraph in this Complaint as if fully set forth here.

92.    At all times herein mentioned, Defendant SANTA BARBARA COUNTY, maintained a longstanding, pervasive, custom, pattern, and/or practices, and each Defendant knew that the following custom, pattern, practice or policies posed this risk of harm. Some of these customs, patterns, practices or policies include, but are not limited to, the following:

a)  To deny inmates at the COUNTY'S jail access to medical/psychiatric attention, continuity of care and/or access to a higher level of care not available at the jail for seriously ill inmates;

b) To fail to properly classify, house and/or monitor inmates suffering from mental health disabilities in compliance with statutory mandates and fail to chart the inmates' mental condition/illness upon transfer to another facility;

c) To fail to provide medical or mental health care for inmates with serious psychiatric/medical needs;

d) To fail to maintain appropriate, competent and sufficient indicated medical and mental health staffing;

e) To fail to use appropriate National and State accepted jail minimum standards, procedures and practices for handling suicidal mentally ill and/or emotionally disturbed persons;

f) To fail to institute, require, and enforce proper and adequate training

supervision, policies, procedures and practices concerning handling mentally ill and/or emotionally disturbed inmates at the County Jail;

g) To fail to comply with their own policies and procedures and/ to fail to supervise to ensure implementation thereof;

h) To fail to maintain competent and adequate supervision and training of medical and custodial staff regarding mentally ill and suicidal inmates;

j) To cover-up violations of constitutional rights by any or all of the following:

1.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and sheriff department personnel, and CFMG/Wellpath personnel, whereby an officer or member of the department and/or CFMG/Wellpath medical staff working in the correctional system under contract does not provide adverse information against a fellow deputy or member of the department or co-worker of CFMG/Wellpath; and,

2.  To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of misconduct, including claims made under California Government Code § 910 et seq.

93.     The unconstitutional customs and practices of Defendants were approved, tolerated and/or ratified by policy making officers for SANTA BARBARA COUNTY.

94.     The aforementioned customs, policies, practices, and procedures were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly-established and well-settled constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth above.

95.     As a direct and proximate result of the unconstitutional above alleged actions, omissions, customs, policies, practices and procedures as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages as set forth above.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA GOVERNMENT CODE § 845.6)**
**PLAINTIFFS SAN JUANARODRIGUEZ-GONZALEZ and J. LUIS DURON-LUEVANO, as Successors in Interest for Decedent, AGAINST DEFENDANTS DEPUTY DE SOTO; DEPUTY RIVERA; WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR DOES 1-10**

95.     Plaintiffs, SAN JUANARODRIGUEZ-GONZALEZ and J. LUIS DURON-LUEVANO, as Successors in Interest for Decedent, re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

96.     Defendants DEPUTY DE SOTO; DEPUTY RIVERA; WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR and Does 6-10 knew or had reason to know that DECEDENT was in need of immediate and a higher level medical and psychiatric care, treatment, and observation and monitoring, that he required special housing and security – including being placed on alcohol withdrawal protocol – for his own safety and well-being, and each Defendant failed to take reasonable action to summon and/or to provide DECEDENT access to such medical care and treatment and/or provide him housing accommodations necessary for him under such circumstances. Each such individual Defendant, employed by and acting within the course and scope of his or her employment with Defendant COUNTY,  CFMG, knowing and/or having reasons to know this, failed to take reasonable action to summon and/or provide DECEDENT access to such care, treatment, and medically appropriate housing in violation of California Government Code § 845.6.

97.     As a proximate cause of the aforementioned acts and omissions of – and attributable under Government Code sections 845.6 and 815.2 to – all Defendants, Plaintiffs were injured as set forth above and is entitled to all damages

allowable under California law. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth herein.

### FIFTH CAUSE OF ACTION
**(NEGLIGENCE-Wrongful Death)**
**(All Plaintiffs Against Defendants DEPUTY DE SOTO; DEPUTY RIVERA; WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR AND DOES 1-10)**

98.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

99.     At all times, each Defendants owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

100.     At all times, each Defendants owed Plaintiffs the duty to act with reasonable care. These general duties of reasonable care and due care owed to Plaintiffs by all Defendants include but are not limited to the following specific obligations:

a) To provide, or have provided sufficient, competent, prompt and appropriate psychiatric/medical care to DECEDENT;

b) To provide safe and appropriate jail custody for DECEDENT, including reasonable classification, monitoring, housing and charting at the time of transfer;

c) To use generally accepted law enforcement and jail procedures that are

reasonable and appropriate for Plaintiff's status as a mentally ill, suicidal and/or emotionally disturbed person;

d) To refrain from abusing their authority granted them by law;

e) To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

101.    Additionally these general duties of reasonable care and due care owed to Plaintiffs by Defendants and each them including DOES 1-10, include but are not limited to the following specific obligations:

a) To properly and reasonably hire, supervise, train, retain, investigate, monitor, evaluate, and discipline each person (i) who was responsible for providing psychiatric/medical care for DECEDENT ; (ii) who was responsible for the safe and appropriate jail custody of DECEDENT ;  (iii) who was responsible for properly and reasonably classifying,  housing, and monitoring DECEDENT ; (iv) who denied DECEDENT  medical attention or access to medical care and treatment; and/or (vi)who failed to summon necessary and appropriate medical care;

b) To properly and adequately hire, supervise, train, retain, investigate, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

c) To make, enforce, and at all times act in conformance with policies and

customs that are lawful and protective of individual rights, including Plaintiffs' rights.

d) To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth herein.

102.    By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care owed to DECEDENT, which foreseeably resulted in the suffering of damages by DECEDENT and Plaintiffs of the loss of their father/son.

103.    Defendants, through their acts and omissions, breached the aforementioned duties owed to DECEDENT and Plaintiffs.

104.    Defendant SANTA BARBARA COUNTY is vicariously liable pursuant to California Government Code section 815.2.

105.    As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as described above.

**SIXTH CAUSE OF ACTION**
**(MEDICAL NEGLIGENCE-Wrongful Death)**
**(All Plaintiffs Against Defendants WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR ; DOES 1-10)**

106.    All Plaintiffs re-allege and incorporate by reference the allegations Contained in this complaint, as though fully set forth herein.

107.    While in Santa Barbara County Jail, DECEDENT  was under the care and treatment of Defendants WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention for the mentally ill and psychiatric services and treatment. Defendants WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, JAYNA LIFORD; KATHLEEN McELROY; HANNA FORDAHL and CALEB TAMMAR,  and DOES 1-10, acting within the scope and course of their employment with Defendants negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer DECEDENT  to specialist mental/medical care providers; negligently failed to provide physician, psychiatric, psychological care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee DECEDENT .

108.    Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely refer DECEDENT  for medical, hospital and/or psychiatric care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for DECEDENT  was provided.

109.    Plaintiffs further allege that other presently unknown supervisory personnel named as DOE defendants, including agents and employees of WELLPATH INC.; WELLPATH MANAGEMENT, INC.; WELLPATH, LLC; CALIFORNIA FORENSIC MEDICAL GROUP, INC, a California corporation, and defendants themselves, failed to conduct appropriate investigatory procedures, and/or follow policies and protocols, including but not limited to involuntary mental health treatment and transfer, implementing interventions and assessment re: increased risk of suicidal behaviors, evaluation and documentation for risk factors so appropriate interventions may be  initiated,  to determine the  need to obtain medical and psychiatric  services  for  DECEDENT  while in Defendants' care, custody, and control.

110.    As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages  as

described above and as  applicable  to this  claim  for Medical Negligence, to be

proven at time of trial.

### SEVENTH CAUSE OF ACTION
**WRONGFUL DEATH**
**DENIAL OF SUBSTANTIVE DUE PROCESS RIGHT TO FAMILIAL**
**RELATIONSHIP -14 Amendment**
**(42 U.S.C. § 1983)**
**BY ALL PLAINTFFS INDIVIDUALLY AGAINST ALL DEFENDANTS.**

111.    Plaintiffs, Juana Rodriguez-Gonzalez, J. Luis Duron-Luevano and

Miguel Angel Duron-Rodriguez, assert wrongful death claims individually under

California Code of Civil Procedure section 377.60, et seq and reallege each and every

paragraph in this Complaint as if fully set forth herein.

112.    All of the acts of Defendants and the persons involved were done

under color of state law.

113.    The acts and omissions of each Defendant deprived Juana Rodriguez-

Gonzalez, J. Luis Duron-Luevano and Miguel Angel Duron-Rodriguez of rights,

privileges, and immunities secured by the Constitution and laws of the United States,

including but not limited to the Fourteenth Amendment by, among other things,

depriving Plaintiffs of their right to a familial relationship with their son/father

DECEDENT  without due process of law by their deliberate indifference in denying

DECEDENT  access to medical and mental health care.

114.    The Defendants, SANTA BARBARA COUNTY, SHWAN

LAMMER,  DEPUTY JOHN HARTLY FREEDMAN, DEPUTY DE SOTO and

DEPUTY RIVERA, and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of SANTA BARBARA COUNTY and CFMG/Wellpath. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are mentally and medically ill access to medical and mental health care as stated above and incorporated herein.

115.    In addition, the training policies of SANTA BARBARA COUNTY and CFMG/WELLPATH Defendants were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody with mental illness. These defendants and each of them knew that its failure to adequately train its deputies, agents and employees to interact with individuals suffering  from mental  illness and/or withdrawing from drug addiction  made it highly predictable that its deputies, agents and employees would engage in conduct that would deprive persons such as DECEDENT , and thus Plaintiffs Juana Rodriguez-Gonzalez, J. Luis Duron-Luevano and Miguel Angel Duron-Rodriguez, of their  rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

116.    Defendants SANTA BARBARA COUNTY and CFMG's/Wellpath's official policies and/or longstanding practices or customs, including but not limited to

its training policies, caused the deprivation of the constitutional rights of Plaintiffs Juana Rodriguez-Gonzalez, J. Luis Duron-Luevano and Miguel Angel Duron-Rodriguez, by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to DECEDENT 's injuries and death and thus the deprivation of the rights of Plaintiffs S Juana Rodriguez-Gonzalez, J. Luis Duron-Luevano and Miguel Angel Duron-Rodriguez, as to be the moving force causing those injuries.

117.    SHAWN LAMMER, a final policymaker for SANTA BARBARA COUNTY, ratified the actions and omissions of the medical staff Defendants and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

118.  Plaintiffs reallege that the CDCR policy stated above is insufficient as written.  Chapter 2, section C – Procedures to Implement Policies, describes the timeline of when an incoming inmate must be examined and when they get their mental health screening.  The physical exam is to happen within three (3) working days of arrival, and the mental health screening is to happen within 7 calendar days of arrival.

119.    As a direct and proximate result of the foregoing wrongful acts, Defendants, and each of them, Plaintiffs sustained general damages, including grief,

emotional distress and pain and suffering, loss of comfort and society, in an amount in accordance with proof.

120.    In doing the foregoing wrongful acts and omissions, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Plaintiffs Juana Rodriguez-Gonzalez, J. Luis Duron-Luevano and Miguel Angel Duron-Rodriguez. The wrongful acts, and each  of  them, were  willful, oppressive, fraudulent,  and malicious, thus warranting the award of punitive damages against each individual Defendant (but not the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

## EIGHTH CAUSE OF ACTION
### (MEDICAL NEGLIGENCE-Wrongful Death)
### (All Plaintiffs Against Defendants COTTAGE HEALTH SYSTEM, SANTA BARBARA COTTAGE HOSPITAL, GOLETA VALLEY COTTAGE HOSPITAL, and BRETT WILSON, M.D 8-10)

121.    Plaintiffs re-allege and incorporate by reference the allegations Contained in this complaint, as though fully set forth herein.

122.    DECEDENT was examined by BRETT WILSON, M.D. an agent/employee of COTTAGE HEALTH SYSTEM, SANTA BARBARA COTTAGE HOSPITAL, GOLETA VALLEY COTTAGE HOSPITAL. Dr. Wilson negligently failed to order a chest x-ray and also failed to start DECEDENT on alcohol withdrawal protocol. BRIAN BRETT and DOES 8-10, acting within the course and scope of her agency and/or employment with COTTAGE HEALTH SYSTEM,

SANTA BARBARA COTTAGE HOSPITAL and GOLETA VALLEY COTTAGE HOSPITAL negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer DECEDENT  to specialist mental/medical care providers; negligently failed to provide physician, psychiatric, psychological care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee DECEDENT.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages as  described above and as  applicable  to this  claim  for Medical Negligence, to be proven at time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

1.        Compensatory damages in an amount according to proof, which is fair, just, and reasonable;

2.        Punitive damages under 42 U.S.C. § 1983, federal law, and California law, in an amount according to proof and which is fair, just, and reasonable against the individual Defendants only;

3.          All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5;California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law;

Dated: June 4, 2024          **CURD, GALINDO & SMITH LLP**

                                        */s/ Alexis Galindo*
                                        ALEXIS GALINDO
                                        MAXIMILIANO GALINDO
                                        Attorneys for Plaintiffs

## **JURY TRIAL DEMAND**

          Plaintiffs hereby respectfully demand a jury trial in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 4, 2024          **CURD, GALINDO & SMITH LLP**

                                        */s/ Alexis Galindo*
                                        ALEXIS GALINDO
                                        MAXIMILIANO GALINDO
                                        Attorneys for Plaintiffs